CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
July 22, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **KAIRA LYNN RATCLIFFE,** ) | |
| Plaintiff, ) | Case No. 7:22-cv-00730 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **TRAVIS HAMILTON, et al.,** ) | Senior United States District Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

Kaira Lynn Ratcliffe, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Travis Hamilton, Toni Trueheart, and Shannon Payne. Ratcliffe claims that the defendants placed her in segregation based on her sexual orientation in violation of the Equal Protection Clause of the Fourteenth Amendment. The defendants have filed a motion for summary judgment to which Ratcliffe has responded. ECF Nos. 28, 36. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

### I. Background

**A. Ratcliffe's Verified Amended Complaint**

At all times relevant to this action, Kaira Ratcliffe was incarcerated at the New River Valley Regional Jail ("NRVRJ") in Dublin, Virginia. Travis Hamilton, Toni Trueheart, and Shannon Payne were employed as correctional officers at the facility.

In her verified amended complaint, Ratcliffe claims that Hamilton placed her and eight other "openly gay" female inmates in segregation from August 2021 to November 2021 based on their sexual orientation. Am. Compl. Attach. 1, ECF No. 15-1. Ratcliffe alleges that she and another inmate, Cassie Perdue, were initially placed in segregation on Friday, August 13,

2021, even though they "never argued [or] fought." Id. She alleges that two "openly gay women" were already in segregation and that five others were moved to segregation over the weekend after they "got into arguments with each other." Id.; see also id. at 2 (identifying female inmates who were "locked down" after getting into a fight).

The following Monday, Hamilton entered the housing unit and allegedly told the inmates that "he was going to gain himself some street credit" by "locking [the nine gay women] down [and] having a whole lockdown wall." Id. at 1. When Hamilton spoke to Ratcliffe individually, he explained that she had to be kept separate as a result of calling Perdue a snitch and that she would remain in segregation for at least 30 days. Id. at 2. Ratcliffe maintains that she ultimately remained in segregation for over two months because Hamilton wanted to "make an example" out of her and other gay inmates. Id. at 3–4.

Ratcliffe alleges that she was placed in segregation again in April 2022 by Toni Trueheart and Shannon Payne. Id. at 4. Ratcliffe asserts that she was initially accused of being "a threat to the facility." Id. (internal quotation marks omitted). After that accusation was purportedly "disproven," Ratcliffe remained in segregation on the basis that she had a "keep separate" with an inmate in a different pod. Id. at 5. She alleges that she was "the first female in the history of the jail being kept in . . . segregation over another inmate on a whole other floor." Id. Ratcliffe remained in segregation for a few months. She claims that "[t]his was a continuation of Hamilton's war on gays and bisexuals supported by his classifications department." Id.; see also id. at 7 ("I did not receive equal protection as a gay/bisexual woman. I was actually punished for it. Straight women didn't face such hardships.").

2

Ratcliffe alleges that Trueheart placed her in segregation again from August to October 2022. Id. at 7. She claims that there was no valid reason for the decision and that "Trueheart was working in concert with Travis Hamilton in response to [her] sexuality." Id.

### B. Defendants' Evidence

In support of their motion for summary judgment, the defendants have submitted their own declarations, along with various exhibits.[1] Hamilton's declaration explains that the NRVRJ has three housing units for female inmates. Hamilton Decl. ¶ 18, ECF No. 29-1. Because the facility "does not have enough female housing units to have whole units specifically devoted to inmates on restrictive housing status . . . , all female housing units are general population units, but specific cells in each unit are devoted to inmates on restrictive housing." Id. Restrictive housing is also referred to as "segregation" or "lockdown." Defs.' Br. Supp. Summ. J. 3, ECF No. 29.

Hamilton's declaration indicates that it was "difficult (and at times impossible) to find housing in general population for Ratcliffe because she had an extensive keep separate list and, per NRVRJ policy, she could not be housed in general population with any inmates on her keep separate list." Hamilton Decl. ¶ 18. NRVRJ records indicate that 15 inmates were added to Ratcliffe's list between June 13, 2021, when she was last booked at the jail, and December 20, 2022, when she was transferred to another correctional facility. ECF No. 29-1 at 8. The list already included 10 other individuals from previous periods of incarceration at the NRVRJ. Id. Sixteen individuals were specifically designated an "enemy" of Ratcliffe. Id.

---

[1] The exhibits are docketed as part of ECF No. 29-1. The court will cite to the exhibits using the pagination assigned by the CM/ECF system.

3

On July 26, 2021, Ratcliffe was issued a disciplinary charge for entering another inmate's cell without authorization. ECF No. 29-1 at 10. The violation report indicates that she pled guilty to the charge and received a sanction of "7 days loss of privileges," which was taken under advisement for 90 days. Id. She remained in general population at that time. Hamilton Decl. ¶ 4.

On August 14, 2021, Correctional Officer Jamie Light submitted an incident report describing incidents involving Ratcliffe and three other inmates that occurred the previous day. ECF No. 29-1 at 11. According to the report, "Inmate Quesenberry turned in multiple request forms stating that Inmate Perdue was bulling and harassing her and [Inmate] Burton, and that she wanted Perdue moved out of the housing unit." Id. At the same time, Ratcliffe "also verbally stated that she was being bullied by Perdue." Id. The complaints were made while Light was in the process of conducting random cell searches. Id. Light reported that while she was searching Ratcliffe's cell, Ratcliffe headed to the steps and "started yelling 'you're a snitch' directly at Perdue." Id. Consequently, Light "ordered Perdue to lockdown in her cell and Ratcliffe to go to the gym." Id. Light reported that both Perdue and Ratcliffe were being placed on lockdown pending review by the NRVRJ Institutional Classification Committee ("ICC"). Id. "Inmates on lockdown are subject to restrictive housing protocols in that they are locked in their cells for 23 hours per day, with one hour out." Hamilton Decl. ¶ 5.

On August 19, 2021, Hamilton reported that an unidentified NRVRJ officer had "found a letter written from Inmate Ratcliffe to Inmate Burton about their unauthorized sexual relationship in the NRVRJ." ECF No. 29-1 at 13. Ratcliffe was subsequently charged

4

with and found guilty of the offense of unauthorized communication. Hamilton Decl. ¶ 6; see also ECF No. 29-1.

Later in the day on August 19, 2021, Ratcliffe participated in an ICC hearing to determine whether she should remain in restrictive housing. Hamilton Decl. ¶ 7. Defendant Truehart served on the ICC, along with Officer Tiffany Payne[2] and Officer Dawn Havens. Id. According to the hearing review form, Ratcliffe denied being in a relationship with Burton but acknowledged having passed a note to her. ECF No. 29-1 at 15. The ICC recommended that Ratcliffe remain in restrictive housing based on her "recent behavior," her "attempts to manipulate housing," and her "extensive enemy list." Id. NRVRJ Superintendent Gregory Winston approved the recommendation on August 26, 2021. Id.; see also Hamilton Decl. ¶ 7.

On August 27, 2021, Officer Thompson found an unsigned note in one of the restrictive housing cells that referenced dating. ECF No. 29-1 at 16. Although Ratcliffe initially denied having knowledge of the note, camera footage reviewed by Thompson and another officer showed Ratcliffe sliding a note under the cell door. Id. Thompson charged Ratcliffe with the offense of authorized communication, and Ratcliffe subsequently pled guilty to the offense. Id.; see also ECF No. 29-1 at 17.

On September 23, 2021, Ratcliffe appeared for another ICC hearing. ECF No. 29-1 at 18. The ICC (consisting of Trueheart, Officer Tiffany Payne, and Officer Kristi Dalton) recommended that Ratcliffe remain in restrictive housing at that time. Hamilton Decl. ¶ 9 (referencing ECF No. 29-1 at 18). They noted that Ratcliffe had not remained free of disciplinary charges and that she had continued to have unauthorized communications with

---

[2] Tiffany Payne is defendant Shannon Payne's wife. Payne Decl. ¶ 3, ECF No. 29-3.

5

other inmates. Id. Superintendent Winston approved the recommendation on September 27, 2021. Id.

The ICC reviewed Ratcliffe's housing status again on October 19, 2021. ECF No. 29-1 at 19. Because Ratcliffe had "remained incident free" since the previous ICC hearing and a housing unit was available in which Ratcliffe could be in general population, the ICC recommended that she be removed from restrictive housing. Id. Superintendent Winston approved the recommendation on November 3, 2021, and Ratcliffe was returned to general population. Hamilton Decl. ¶ 10.

On February 19, 2022, Officer Moser submitted an incident report regarding a physical altercation that occurred the previous day between Ratcliffe and Inmate Moyer. Moser noted that both inmates had been locked down in their assigned cells as a result of the incident and that he would be charging them with fighting. ECF No. 29-1 at 20. Ratcliffe received the disciplinary charge on February 20, 2022, and the disciplinary committee found her guilty of the charged offense. ECF No. 29-1 at 21.

On April 9, 2022, Officer Moser submitted another incident report after discovering that the toilet in Ratcliffe's cell had been "pumped out." ECF No. 29-1 at 22. Moser reported that Ratcliffe had admitted to talking to inmates through the toilet and that he would be charging her with the offense of unauthorized communication. Id. Ratcliffe received the disciplinary charge on April 10, 2022, and subsequently pled guilty to the charged offense. ECF No. 29-1 at 23.

Later in the day on April 9, 2022, Officer Moser submitted another incident report indicating that he had observed Ratcliffe walk behind Inmate Leatham and begin hitting her.

ECF No. 29-1 at 24. While Moser was requesting assistance, "Ratcliffe pulled Leatham from the table to floor and . . . continued to hit her while she was on the ground." Id. Moser reported that he would be charging Ratcliffe with the offense of assault. Id. Ratcliffe received the disciplinary violation report on April 10, 2022, and the disciplinary committee found her guilty of the charged offense. ECF No. 29-1 at 25.

Ratcliffe appeared for an ICC hearing on April 12, 2022. ECF No. 29-1 at 26. Based on Ratcliffe's recent "behavior and record of altercations," the ICC (consisting of Officers Tiffany Payne, Amy Litz, and Donald Thomas) recommended that Ratcliffe remain in restrictive housing. Id.; see also Hamilton Decl. ¶ 14. Superintendent Winston approved the ICC's recommendation on April 15, 2022. Id.

On April 13, 2022, Officer Lucas submitted an incident report alleging that Ratcliffe had falsely claimed to have legal mail that needed to be sent. ECF No. 29-1 at 27. Upon retrieving the mail left in front of Ratcliffe's cell door, Lucas discovered that the envelope actually was addressed to an inmate at the NRVRJ and that it contained 12 letters written to multiple other inmates. Id. Lucas reported that he would be charging Ratcliffe with the offenses of unauthorized communication and lying. Id. Ratcliffe received the disciplinary violation reports on April 14, 2022, and she pled guilty to both charges. ECF No. 29-1 at 28–29.

On May 27, 2022, the ICC (consisting of Officers Tiffany Payne and Kay-Ann Sadler) reviewed Ratcliffe's housing status and determined that she could return to general population. ECF No. 29-1 at 30. Superintendent Winston approved the recommendation on June 2, 2022, and Ratcliffe was released from segregation. Id.; see also Hamilton Decl. ¶ 16.

On July 24, 2022, Officer Boyd reported that Ratcliffe had been placed on lockdown in her housing unit after other inmates had approached Boyd and complained that Ratcliffe was bullying and threatening them. ECF No. 29-1 at 31. Boyd noted that Ratcliffe had "enemies in all pods" and that the complaining inmates would be added to her "keep separate" list. Id. Based on the information provided by Boyd, defendants Trueheart and Hamilton "decided to place [Ratcliffe] on restrictive housing-protective custody for her own safety and for the safety of other inmates and officers in the facility." Hamilton Decl. ¶ 17.

On August 5, 2022, Officer Burnette reported that he had walked past Ratcliffe's cell and observed her "trying to hide a toilet talking device in her property box while kneeling over the toilet." ECF No. 29-1 at 32. When Burnette asked Ratcliffe what she was doing, Ratcliffe "admitted that she was toilet talking." Id. Burnette confiscated the device and informed Ratcliffe that she would be charged with a disciplinary offense. Id. On August 6, 2022, Ratcliffe received a violation report that charged her with unauthorized communication. ECF No. 29-1 at 33. On August 9, 2022, she pled guilty to the offense. Id.

On October 14, 2022, Ratcliffe returned to general population after another female inmate, Brandon Akers, was released from the NRVRJ. Trueheart Decl. ¶ 16, ECF No. 29-2. Akers was on Ratcliffe's enemy list. Id. "Once Akers was released, [Trueheart] was able to shift inmates' housing so that [she] could move Ratcliffe to a general population unit where she didn't have any enemies." Id.

On October 18, 2022, Officer Price submitted an incident report indicating that he had picked up a letter from Ratcliffe while collecting mail. ECF No. 29-1 at 34. Because of the envelope's unusual size, Price suspected that it contained "three way mail." Id. Upon opening

8

the envelope, Price discovered that it contained another sealed envelope addressed to Inmate Crosby. Price reported that he would be charging Ratcliffe with unauthorized communication. Id. Ratcliffe received a copy of the disciplinary offense report that same day. ECF No. 29-1 at 35. She pled guilty to the charged offense and was sanctioned with the loss of privileges for 20 days. Id. Approximately two months later, on December 20, 2022, Ratcliffe was transferred to another facility. Hamilton Decl. ¶ 12.

Defendants Hamilton and Trueheart both maintain that they "hold no prejudice against homosexual or bisexual individuals," that their decisions with respect to Ratcliffe "had nothing to do with her sexual orientation," and that they "treated heterosexual inmates with similar backgrounds of policy violations and an accumulation of keep separates in the same manner." Id. ¶ 22; see also Trueheart Decl. ¶ 18. Defendant Payne's declaration indicates that Payne did not patrol Ratcliffe's housing units, have any involvement in any incidents with Ratcliffe, or play any role in deciding whether to place her in restrictive housing at any time. Payne Decl. ¶ 2, ECF No. 29-3. Payne notes that Officer Tiffany Payne works in the classifications department at the NRVRJ and that it appears that Ratcliffe may have intended to sue that officer. Id. ¶ 3.

## II. Procedural History

On December 21, 2022, Ratcliffe commenced this action by filing a form complaint under 42 U.S.C. § 1983. Ratcliffe subsequently filed an amended complaint against Hamilton, Trueheart, and Shannon Payne. Ratcliffe claims that she "did not receive equal protection as a gay/bisexual woman" and that she was placed in segregation on each occasion "for being gay." Am. Compl. Attach. 7–8.

The case is presently before the court on the defendants' motion for summary judgment. ECF No. 28. Ratcliffe has filed a response to the motion, ECF No. 36, and the motion is ripe for decision.

### III.     Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Henry v. Purnell, 652 F.3d 524, 548 (4th Cir. 2011)).

When ruling on a motion for summary judgment, the court must "view the facts and all justifiable inferences arising therefrom in the list most favorable to the nonmoving party." Id. at 312. The court may not "weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015). "To survive summary judgment, 'there must be evidence on which the jury could reasonably find for the [nonmovant].'" Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "However, it is well-established that a verified complaint is the equivalent of an opposing

10

affidavit for summary judgment purposes, when the [factual] allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks omitted); see Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Nonetheless, conclusory allegations in a verified complaint are insufficient to survive summary judgment. See Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.").

## IV. Discussion

### A. Personal Involvement in the Alleged Violations

Ratcliffe filed suit against the defendants under 42 U.S.C. § 1983. "Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting 'under color of' state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018). "To establish personal liability under § 1983, . . . the plaintiff must affirmatively show that the official charge acted personally in the deprivation of the plaintiff's rights." Id. (internal quotation marks and brackets omitted). In other words, the defendant's "own individual actions" must have "violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Based on the evidence presented, the court concludes that no reasonable jury could find that Shannon Payne was personally involved in the alleged violations of Ratcliffe's right to equal protection. Although Ratcliffe claims that Shannon Payne played a role in having her

11

returned to segregation in April 2022, the defendants' declarations indicate that Tiffany Payne, rather than Shannon Payne, served on the ICC during the relevant time period. See Hamilton Decl. ¶¶ 7, 14; Trueheart Decl. ¶ 10; Payne Decl. ¶ 3. The defendants' evidence also indicates that Shannon Payne supervised security operations at the NRVRJ during the relevant time period and that Shannon Payne did not patrol Ratcliffe's housing units or play any role in deciding whether to confine Ratcliffe in restrictive housing. Payne Decl. ¶ 2.

In her response to the defendants' motion for summary judgment, Ratcliffe does not address the defendants' argument that Shannon Payne was not personally involved in the events giving rise to this action. Nor does she cite to any evidence contradicting Payne's sworn statements. Because Ratcliffe has not presented any non-conclusory allegations indicating that Payne was personally involved in her housing assignments, the court concludes that Payne is entitled to summary judgment. See Reddy v. Buttar, 38 F.4th 393, 403 (4th Cir. 2022) (explaining that in order to establish a genuine dispute as to a material fact, "the party opposing the motion [for summary judgment] must rely on more than 'conclusory allegations'") (quoting Dash, 731 F.3d at 311); Sabbats v. Clarke, No. 7:21-cv-00198, 2022 WL 4134771, at *5 (W.D. Va. Sept. 12, 2022) (noting that when "a pro se plaintiff fails to respond to a defendant's specific evidence contradicting the conclusory allegations of her complaint or submissions, . . . that defendant may be entitled to summary judgment") (citing Baber v. Hosp. Corp. of Am., 977 F.2d 872, 875 (4th Cir. 1992)).

    **B.**    **Merits of the Equal Protection Claims**

The defendants also argue that Ratcliffe's equal protection claims fail as a matter of law. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State

shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is 'essentially a direction that all persons similarly situated should be treated alike.'" Grimm v. Gloucester Cnty. Sch. Bd., 972 F.3d 586, 606 (4th Cir. 2020) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). "Accordingly, '[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that [she] has been treated differently from others with whom [she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Alive Church of the Nazarene, Inc. v. Prince William Cnty., 59 F.4th 92, 112 (4th Cir. 2023) (first alteration in original) (quoting Martin v. Duffy, 858 F.3d 239, 252 (4th Cir. 2017)). If the plaintiff makes that showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Martin, 858 F.3d at 252 (internal quotation marks omitted).

The defendants argue that Ratcliffe's equal protection claims fail at the first step. "The first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 959 (8th Cir. 2019) (internal quotation marks omitted). Absent such showing, a plaintiff does not have a viable equal protection claim. Id.; see also SAS Assocs. 1, LLC v. City Council for the City of Chesapeake, 91 F.4th 715, 722 (4th Cir. 2024) ("It is fundamental to equal protection law that those differently situated may be treated differently."); Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection.").

"To make out this first part of an equal protection claim," a plaintiff must show that she and other individuals who were treated differently were "in all relevant respects alike." Doe v. Settle, 24 F.4th 932, 939 (4th Cir. 2022) (internal quotation marks omitted). Therefore, a plaintiff "must allege more than 'broad generalities' in identifying a comparator." Stradford v. Sec'y Pa. Dep't of Corr., 53 F.4th 67, 74 (3d Cir. 2022) (quoting Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1204 (11th Cir. 2007). "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors." United States v. Olvis, 97 F.3d 739, 744 (4th Cir. 1996). When determining whether inmates are similarly situated, relevant factors may include "the history of their conduct" while incarcerated, "including the specifics of any infractions they have committed." Grissom v. Roberts, 902 F.3d 1162, 1173 (10th Cir. 2018); see also Streater v. Allen, 805 F. App'x 293, 297 (5th Cir. 2020) (concluding that an inmate's discrimination claim under the Fourteenth Amendment was "unsubstantiated" since he "presented no evidence that [other inmates who remained in dorms despite having disciplinary cases] were similarly situated by either disciplinary case or classification"); Keck v. Zenon, 240 F. App'x 815, 819-20 (10th Cir. 2007) (affirming the dismissal of a segregation-related equal protection claim where the inmate offered no basis to believe that the other inmates he identified had a similar disciplinary history); Joyner v. Fleming, No. 7:16-cv-00486, 2019 WL 1264893, at *3 (W.D. Va. Mar. 19, 2019) (concluding that an inmate failed to show that he was similarly situated to other inmates who were released from segregation before him since he did not allege that the other inmates had similar disciplinary convictions).

Applying these principles, the court concludes that Ratcliffe has failed to proffer sufficient evidence to create a genuine issue of material fact as to whether she was treated differently than similarly situated inmates. Id. Although Ratcliffe claims that she and other openly gay women were confined in restrictive housing for various periods and that "straight women didn't face [the same] hardships," Am. Compl. 7, her verified pleading contains no non-conclusory basis for finding that any of the unidentified non-gay inmates were similarly situated to her. NRVRJ records indicate that correctional officials considered Ratcliffe's disciplinary record and her "keep separate" list in determining whether to confine her in restrictive housing. It is undisputed that Ratcliffe was found guilty of at least 9 disciplinary infractions over a 16-month period and that her "keep separate" list included multiple enemies. Ratcliffe has not identified any inmates who had similar disciplinary histories and enemy lists but were nonetheless allowed to remain in general population, rather than being placed in restrictive housing. Because the record does not contain sufficient evidence from which a reasonable jury could find that Ratcliffe was treated differently from others with whom she was similarly situated, the defendants are entitled to summary judgment on the merits of her equal protection claims.

## V. Conclusion

For the reasons stated, the court concludes that there is no genuine dispute as to any material fact and that the defendants are entitled to judgment as a matter of law. Accordingly, the defendants' motion for summary judgment, ECF No. 28, is **GRANTED**.

An appropriate order will be entered.

Entered: July 19, 2024

Mike Urbanski    Senior
U.S.District Judge
2024.07.19 13:45:21 -04'00'

Michael F. Urbanski
Senior United States District Judge